Filed 1/16/25  In re G.S. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re G.S., a Person Coming Under the Juvenile Court Law. | B334417<br><br>(Los Angeles County Super. Ct. No. 23CCJP03860C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>Jesus S.,<br><br>     Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Dismissed.

Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

Jesus S., father of minor G.S., challenges the juvenile court's jurisdictional order finding G.S. to be a person described by Welfare and Institutions Code section 300, subdivision (a).[1] The juvenile court found dependency jurisdiction warranted under section 300, subdivisions (a) and (b), based on nearly identical factual allegations, however father does not challenge the jurisdictional finding under section 300, subdivision (b). We dismiss the appeal for lack of justiciability.

**FACTUAL AND PROCEDURAL BACKGROUND**

Four-year-old G.S. came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) in September 2023, following two altercations between the parents. According to an August 2023 police report, law enforcement was called to the family's home on August 5. Mother reported that father had returned from a work trip and accused her of infidelity. Father grabbed mother's arm and was "rough and aggressive." Mother was able to get away. Father then locked himself in their bedroom. Mother told law enforcement there had been previous domestic violence incidents. Father admitted arguing with mother but denied grabbing her arm.

According to a September 2023 police report, law enforcement was again called to the family's home on September 15. Mother told police father had arrived home and again

———————

[1]     All further statutory references are to the Welfare and Institutions Code.

2

accused her of infidelity.  During the argument that followed, father began throwing things around the house.  Father grabbed mother's sweatshirt and twisted it, closing the neck hole over mother's throat, and making it difficult for her to speak and breathe.  Mother felt faint and lightheaded from her restricted breathing.  Eventually father released his grip, then he began throwing mother's possessions onto the sidewalk.  A witness at the scene said mother had sent her a text message indicating father was acting erratically and had attempted to strike her.

DCFS interviewed G.S.'s two maternal half siblings, E.C. (12 years old) and A.C. (14 years old).[2]  E.C. told a social worker that she and G.S. were in the home during the parents' altercation in August.  According to E.C., the parents were screaming, which frightened G.S., but there was no physical violence.  She left during the incident for her father's house and took G.S. with her.

A.C. was not present during the August incident, but she and G.S. were home during the September incident.  According to A.C., she was alone in her room and G.S. was with mother when the parents began arguing.  Father came home drunk and accused mother of infidelity.  Although A.C. repeatedly tried to take G.S. outside, mother called her back and asked her to tell father that mother had not cheated on him.  A.C. put G.S. in her room.  She saw father pulling on mother's sweater, but she denied that he was twisting it or preventing mother from breathing.  There was a lot of noise in the house.  A.C. called her

---

[2]  Although the dependency petition was sustained as to all three children, only G.S.'s father has appealed.  The juvenile court's orders regarding G.S.'s siblings are not at issue in this appeal.

3

father for help but decided not to leave with him because she wanted to stay to protect G.S. She carried G.S. during the incident because he was crying, and she was also crying.

When interviewed by DCFS, mother admitted that during the September incident, father grabbed her sweatshirt and pulled, causing her to scream, but she denied that he restricted her breathing. Mother denied that A.C. and G.S. witnessed the incident. She also said that none of the children were home during the August incident. She described father as being loving, caring, and family oriented. In a subsequent interview, mother denied screaming during the September incident and reported that father only tugged at her sweatshirt as she attempted to walk away. Mother stated the parents had no domestic violence history and the two recent incidents were isolated ones.

Father admitted to a DCFS social worker that he grabbed the sleeves of mother's sweatshirt during the September incident, but he denied restraining her neck. He denied ever pulling or striking mother. He reported that he did not see any of the children during the incident. He described the August incident as a "verbal discussion," and said none of the children were home that night. In a later interview, father said he grabbed mother by the sweatshirt, but not forcefully, and nothing else happened. He denied ever arguing in front of the children and said the September incident happened outside the family's home, away from the children.

In January 2024, the juvenile court sustained a petition asserting the children were persons described by section 300, subdivisions (a) and (b). Count a1 of the petition alleged that, pursuant to section 300, subdivision (a), there was a substantial risk the children would suffer serious physical harm inflicted

4

nonaccidentally upon them by their parent or guardian. Count b1 of the petition alleged that, pursuant to section 300, subdivision (b), there was a substantial risk the children would suffer serious physical harm or illness as a result of a parent or guardian's willful or negligent failure to supervise or adequately protect them.

As to both counts, the court found true the petition's allegations that the parents engaged in violent verbal and physical altercations in the home; in September 2023, father grabbed mother hard by the sweatshirt, causing her to scream; he twisted the sweatshirt "enough to close the sweatshirt['s] neck hole over the mother's throat, making it difficult for the mother to breathe and causing the mother to feel faint and light headed"; in August 2023, father grabbed mother's arm, leading to father's arrest; and "such violent conduct on the part of [father] towards the mother," endangered the children's physical health and safety and placed them at risk of serious physical harm.

The juvenile court removed G.S. from father and placed him with mother, under DCFS supervision. Father timely appealed.

## DISCUSSION

Father contends substantial evidence did not support the juvenile court's finding that G.S. was placed at risk of suffering serious physical harm inflicted nonaccidentally by father within the meaning of section 300, subdivision (a). Father does not otherwise challenge the court's jurisdictional order. We conclude father has not raised a justiciable issue.

"It is a fundamental principle of appellate practice that an appeal will not be entertained unless it presents a justiciable issue." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1489 (*I.A.*),

5

overruled on another ground in *In re D.P.* (2023) 14 Cal.5th 266, 283 (*D.P.*).) "An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status." (*I.A.*, at p. 1490.)

It is also well established that " '[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

Here, the juvenile court found a basis for jurisdiction under section 300, subdivision (b), as well as under subdivision (a). Father does not challenge the section 300, subdivision (b) finding. Thus, even if he were to prevail on appeal, we would not disturb the court's jurisdictional or dispositional orders. (*D.P.*, *supra*, 14 Cal.5th at pp. 283–284; *I.A.*, *supra*, 201 Cal.App.4th at pp. 1491–1492.)

Father thus fails to identify any tangible impact his successful appeal could achieve. He identifies no specific dispositional order that would be undermined by a reversal of the section 300, subdivision (a) finding. Striking jurisdictional allegations sustained under section 300, subdivision (a) "would have neither legal nor practical consequence" in the ongoing proceedings, and therefore would not provide father any effective relief. (*I.A.*, *supra*, 201 Cal.App.4th at p. 1493.)

6

Father nonetheless asks us to exercise our discretion to reach the merits of his arguments. Although "no single factor is necessarily dispositive of whether a court should exercise discretionary review of a moot appeal," appellate courts often reach the merits when a juvenile court's jurisdictional findings could have consequences for the appellant beyond jurisdiction (*D.P.*, *supra*, 14 Cal.5th at pp. 286, 285), or when a challenged finding "is based on particularly pernicious or stigmatizing conduct." (*Id.* at pp. 285–286.)

Father contends the section 300, subdivision (a) finding is "more stigmatizing" than the subdivision (b) finding. However, that one basis for jurisdiction may carry more stigma than another does not establish that the alleged conduct is "*particularly* pernicious or stigmatizing . . . ." (*D.P.*, *supra*, 14 Cal.5th at pp. 285–286, italics added.) And, as father acknowledges, our high court has indicated that "stigma alone will not sustain an appeal," although we may consider the nature of the allegations when deciding whether discretionary review is proper. (*Id.* at p. 286.) Here, the petition's allegations detail the conduct forming the basis of the subdivision (a) count, none of which suggests a level of egregiousness that would warrant the review of an otherwise nonjusticiable appeal. (Cf. *In re G.Z.* (2022) 85 Cal.App.5th 857, 875–876 [addressing merits of appeal despite termination of jurisdiction where mother challenged the sole basis for jurisdiction and the petition alleged mother's neglect led to infant's multiple subdural hematomas].)

Father additionally contends discretionary review is appropriate because of the potential that the section 300, subdivision (a) finding could negatively impact him in a future family law proceeding. This possibility is too speculative to

warrant discretionary review, particularly since, as noted above, father's conduct underlying the subdivision (a) finding was also the basis of the subdivision (b) finding that father does not challenge. (*I.A.*, *supra*, 201 Cal.App.4th at pp. 1493, 1495; cf. *D.P.*, *supra*, 14 Cal.5th at p. 286 [discretionary review may be appropriate where parent challenges only one jurisdictional finding that involves "particularly severe conduct"].)

We decline to exercise our discretion to reach the merits of father's arguments regarding the court's jurisdictional finding under section 300, subdivision (a).

**DISPOSITION**

The appeal is dismissed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.

8